IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Case No. 1:22-cr-17 |
| v. | ) |
| UPENDRA ADURU, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Defendant Upendra Aduru ("Aduru") is charged in this case with one count of inducing a minor to engage in illegal sexual activity, in violation of 18 U.S.C. §2422(b). He is currently detained at the Erie County Prison ("ECP") as he awaits trial on this charge. Pending before the Court is Aduru's motion for a transfer to a different place of detention where, unlike at ECP, he would have the capability of participating in a psychiatric interview via video conferencing. The government opposes Aduru's request on the ground that the Executive Branch has the sole responsibility and authority to determine where Aduru is housed. The government contends that, if this Court were to direct Aduru's transfer to a different facility, it would establish a precedent that violates federal law.

Where a federal court has ordered the pretrial detention of a person awaiting trial on federal charges, the court shall "direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility...." 18 U.S.C. §3142(i)(2). Consistent with this authority, United States Magistrate Judge Richard A. Lanzillo entered an order on

1

October 13, 2022 for Aduru's detention, thereby committing him to the custody of the Attorney General or his designated representative for confinement pending trial. ECF No. 23.

Relevantly, the United States Marshal Service ("USMS") has been given the responsibility to "provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." 18 U.S.C. §4086; *see also* 28 C.F.R. § 0.111(k) (making the Director of USMS responsible for the "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence."). Given this broad grant of authority, federal courts tend to view the placement decisions of the USMS with deference. *See, e.g., Cometa v. Doe*, No. 5:18-CV-233-OC-10PRL, 2018 WL 11247169, at *1 (M.D. Fla. Aug. 15, 2018) ("The authority of the USMS has been referred to as open-ended, which recognizes the need to afford the USMS deference in its placement of inmates or pretrial detainees."); *Saunders v. United States*, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007) (noting that the USMS's "open-ended authority recognizes the Marshals Service's need to weigh concerns of expense, administration, payment, access to the premises, and the veritable plethora of factors" bearing on appropriate placement). Importantly, "the detention provisions of 18 U.S.C. §3142 . . . do not contain mandatory language limiting the Attorney General's discretion in selecting the appropriate forum for the pre-trial detention of a defendant awaiting trial." *Falcon v. Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994). And, in any event, "[a] pre-trial detainee does not have the right to be housed at the facility of his choice, nor does he have a right to remain in the institution to which he was initially, or even at one time, assigned." *Id.*

In this case, Aduru's request for a transfer is predicated on his desire to undergo a psychiatric evaluation with Dr. Michelle Joy, a board-certified forensic psychiatrist whose practice is based in Philadelphia. Aduru points out that the cost of conducting the interview would be greatly reduced if Dr. Joy's interview(s) can be conducted by video conference rather than in person. He also notes that Dr. Joy is fluent in Telugu, which is Aduru's native language. Aduru points to other cases within this judicial district wherein Dr. Joy has been enlisted to conduct forensic interviews via zoom. *See* ECF No. 34 at 1 (citing *United States v. Porch*, Case No. 2:18-cr-321 (W.D. Pa.) (Ambrose, D.J.); *United States v. Peters*, Case No. 2:21-cr-419 (W.D. Pa.) (Schwab, D.J.)). Unfortunately, inmates at ECP do not have the ability to conduct video interviews.

Aduru argues that concerns about equal protection of the law will arise if his requested transfer is denied. He reasons that ECP's policy of disallowing video conferencing "will have the practical impact of denying [him] access to the same expert that has been provided to similarly situated defendants." ECF No. 34 at 2. Aduru also cites authority holding that a court may intervene if a housing decision interferes with a defendant's access to counsel. *See id.* (citing *Falcon*, 852 F. Supp. at 1422, and *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993)).

Having given due consideration to Aduru's arguments, the Court finds them unpersuasive. Equal protection concerns arise when persons who are otherwise similarly situated in all relevant respects are treated differently by the state. *See Washington v. Wetzel*, No. CV 18-1390, 2022 WL 1782509, at *14 (W.D. Pa. June 1, 2022) ("[A]n equal protection claim arises when a person alleges that the state has treated him differently from others similarly situated.") (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)), *reconsideration denied,* No. CV 18-1390, 2022 WL 2392364 (W.D. Pa. July 1, 2022). Such concerns are

3

generally allayed if the allegedly discriminatory treatment is rationally related to a legitimate governmental concern. *See Stradford v. Sec'y Pennsylvania Dep't of Corr.*, 53 F.4th 67, 73 (3d Cir. 2022) (noting that "[t]he Equal Protection Clause does not forbid classifications[,] . . . [b]ut the distinctions between classes "must be rationally related to a legitimate governmental purpose") (internal quotation marks and citations omitted).

Here, there is nothing of record to establish that Aduru is being treated differently from other detained individuals who are similarly situated in all relevant respects. *See Stradford*, 53 F.4th at 74 (noting that "the Fourteenth Amendment proscribes unequal treatment only among persons similarly situated according to a relevant standard of comparison"). To the extent Aduru compares his own situation to those of the defendants in the *Porch* and *Peters* cases, *see supra,* there is nothing of record to suggest that those defendants were housed in facilities lacking video-conferencing capabilities or that those defendants sought a court-ordered transfer to a different facility, as Aduru does here. *See Stradford*, 53 F.4th at 74 (stating that "an equal-protection challenge must allege more than 'broad generalities' in identifying a comparator"). Similarly, nothing of record allows this Court to conclude that Aduru is being treated differently based on reasons that are not rationally related to legitimate governmental interests. Thus, no violation of equal protection principles is evident. Nor has any evidence been placed in the record to suggest that Aduru is being denied access to his attorney. Accordingly, Aduru's constitutional arguments for the requested transfer appear to lack merit.

Meanwhile, the government's opposition to Aduru's transfer request appears to be well-grounded. First, as noted, the Attorney General's determination concerning the housing of a pretrial detainee is entitled to deference, since placement decisions necessarily implicate "concerns of expense, administration, payment, access to the premises, and a veritable plethora

4

of factors." *Saunders,* 502 F. Supp. 2d at 496. Indeed, it is questionable whether this Court even has the jurisdictional authority to order a housing transfer, at least where no evidence of a constitutional violation is present. *See, e.g., Stile,* 2013 WL 12195872 at *2 (noting that, "absent special circumstance not present here, it is questionable whether the Court has the legal authority to meddle in the Marshal's discretionary decision-making, and to issue an order telling the Marshal how to transport and house a defendant awaiting trial"); *see also, Cometa,* 2018 WL 11247169 at *2 (noting that courts in the Eleventh Circuit have recognized that the district court does not have jurisdiction to decide the location of a defendant's incarceration, as that decision rests solely with the executive branch). Accordingly, absent special circumstances, this Court is loath to establish a precedent of interfering with the routine placement decisions of the USMS.

Second, Aduru's concerns about his ability to confer with Dr. Joy are, to some extent, misplaced. As the government points out, Aduru is an indigent party and, as such, will not bear the cost of his expert's travel. Instead, the government will bear the burden of Dr. Joy's expenses. And, even if Aduru were ultimately required to retain a different expert located in closer proximity to his housing, this alone would not raise any obvious constitutional concerns.

For all of the foregoing reasons, the Court finds that the record as it currently stands does not support Aduru's request for a transfer to a different housing facility. His motion will therefore be denied; however, the denial will be without prejudice, and Aduru will retain the right to reassert his motion, should future circumstances so warrant.

*[signature]*
SUSAN PARADISE BAXTER
United States District Judge